UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

In re:

DENALI FAMILY SERVICES,

            Debtor.

Case No. A13-00114-GS
Chapter 11

**MEMORANDUM ON DEBTOR'S MOTION FOR AN
ORDER DETERMINING THAT THE APPOINTMENT
OF A PATIENT CARE OMBUDSMAN IS NOT NECESSARY**

On April 12, 2013, the court held a hearing on debtor in possession Denali Family Services's ("DFS") *Motion Pursuant to 11 U.S.C. § 333(a)(1) for an Order Determining that the Appointment of a Patient Care Ombudsmen is not Necessary ("Motion")*. DFS provides services for troubled children, and qualifies as a health care business under the Bankruptcy Code. As a result, 11 U.S.C. § 333(a)(1) requires that an ombudsman be appointed to monitor patient care and represent their interests within the bankruptcy unless the court finds that an ombudsman is not necessary.[1] DFS argues that its reorganization does not threaten its level of care, and that existing internal safeguards and governmental supervision render appointment of an ombudsmen unnecessary in this case. DFS' interim chief executive officer, Allen Blair, testified in support of the *Motion,* which is unopposed.[2] Based upon Mr. Blair's testimony, and the statements of counsel at the hearing, I agree that the appointment of an ombudsman is not necessary at this time.

---

[1] 11 U.S.C. § 333(a)(1).

[2] Mr. Blair has worked for DFS since 1999, and has served as its clinical director since 2004. He became the interim CEO in February 2013 when the discovery of substantial tax issues forced DFS's prior CEO to resign. *Declaration of Allen Blair in Support of Chapter 11 Petition and Debtor's First Day Motion* (Docket No. 2), at 1.

DFS provides a wide range of behavioral health services to severely emotionally disturbed children, including psychiatric assessments and counseling, placement in foster homes, case management, skills teaching, after school programs, and a therapeutic preschool. It has roughly 171 employees and works with about 50 foster care families. It employs one psychiatrist for psychiatric assessments, and a number of clinical staff who provide therapy treatment under the supervision of Mr. Blair and another individual. DFS serves roughly 500 children, ranging anywhere from 3 to 24 years of age, annually.

DFS is a grantee of the State of Alaska, subject to a number of municipal, state, and federal statutes and regulations. Its operations are closely supervised by the Alaska Department of Health and Social Services, Division of Behavioral Health, which conducts a periodic audit of its operations.[3] All staff are required to undergo structured training, and must document all patient treatments and encounters for review and auditing. DFS has a detailed internal grievance policy, including an online component that allows complaints to be made without direct confrontation. Complaints are administered by a designated Quality Assurance Person responsible for reviewing grievances, conducting periodic audits, and compiling client data for review.

Recognizing that patients of a health care business in bankruptcy may have greatly different interests from a debtor's creditors, § 333(a)(1) of the Bankruptcy Code mandates that the court appoint a patient care ombudsmen to advocate for, and represent, the patients' interests.[4] The ombudsman is charged with monitoring the quality of patient care, filing

---

[3] Mr. Blair testified that periodic audits were conducted, but could not remember if they were performed annually or biannually.

[4] 3 *Collier on Bankruptcy* ¶ 333.01 at 333-3(Alan N. Resnick & Henry J. Sommers eds. 16th ed.).

2

reports with the court every 60 days regarding the quality of patient care, and if the quality of care declines significantly, filing a motion with the bankruptcy court so that the issue can be addressed.[5] Section 333(a)(1) authorizes courts to forego appointment of an ombudsman, but only where the debtor proves that "the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case."[6] Such a determination necessarily requires a careful examination of the totality of circumstances surrounding the debtor's bankruptcy and operations.[7] Courts have applied a nine factor analysis to evaluate the need for appointment of an ombudsman:

> (1) the cause of the bankruptcy;
>
> (2) the presence and role of licensing or supervising entities;
>
> (3) debtor's past history of patient care;
>
> (4) the ability of the patients to protect their rights;
>
> (5) the level of dependency of the patients on the facility;
>
> (6) the likelihood of tension between the interests of the patients and the debtor;
>
> (7) the potential injury to the patients if the debtor drastically reduced its level of patient care;

---

[5] 11 U.S.C. § 333(b)(1) - (3).

[6] 11 U.S.C. § 333(a)(1).

[7] *In re Alternate Family Care,* 377 B.R. 754, 758 (Bankr. S.D. Fla. 2007).

>	(8) the presence and sufficiency of internal safeguards to ensure the appropriate level of care;
>
>	(9) the impact of the cost of the ombudsman on the likelihood of a successful reorganization.[8]

No single factor is determinative, and the weight to be given individual factors depends upon the circumstances of the case.[9]

In the case of DFS, four of the above factors weigh in favor of the appointment of an ombudsman to varying degrees. The third factor – the debtor's history of patient care – tips slightly in favor of the appointment of an ombudsman. DFS has operated for 18 years, and no regulatory actions or restrictions have been taken against it. The State of Alaska was given notice of DFS's *Motion*, and has filed no response. Although the State has not opposed the *Motion*, and has not had to take any corrective action against DFS, there was evidence that issues have arisen with regard to DFS's patient care. Mr. Blair testified that DFS occasionally receives contact from parents asking it to change counselors or complaining about the timeliness of staff responses to questions. However, it appears DFS is responsive to these complaints. According to Mr. Blair, DFS consistently works to match counselors to the children, and makes changes if an issue arises. He is also aware that at least one individual has received more than one complaint that calls were not timely returned, and DFS has addressed that matter internally.

More troubling was a prepetition incident involving two teenagers who, while waiting for a counseling session, made plans to have sex on DFS premises. This incident has been

---

[8] *Id.* at 758; *see also In re Flagship Franchises of Minnesota, LLC*, 484 BR 759, 762 (Bankr. D. Minn. 2913)(collecting cases).

[9] *Flagship Franchises*, 484 B.R. at 762.

4

listed as a potential claim in DFS' schedules. Although this situation did not arise directly out of DFS' services or patient care, it could suggest a lack of supervision. For this reason, I find that this factor weighs in favor of appointing an ombudsman, although the isolated nature of the incident and the absence of any regulatory complaints or action limit the weight placed upon it. Moreover, Mr. Blair's testimony established that DFS is aware of the issues involved in its patient care and promptly addresses them as they arise. The overwhelming majority of issues relating to patient care relate to the compatibility of counselors and patients, and are accommodated as a matter of policy. The appointment of an ombudsman would not prevent these issues from arising, nor does it appear that an ombudsman would facilitate their resolution.

The fourth factor – the ability of the patients to protect their rights – also weighs in favor of the appointment of an ombudsman. It is unlikely that minors, particularly those with emotional or psychological issues, would be able to protect their rights as health care patients.[10] DFS' clients are children, most of whom have behavioral issues. DFS admits that they are not well equipped to protect their own interests.[11] However, most of these children have parents or guardian ad litems who are involved in their care. Presumably, they are able to protect their children's rights, particularly because DFS' services are provided on an outpatient basis, giving them the ability to monitor the care given.[12] Moreover, Mr. Blair testified that the bankruptcy has not affected DFS' services to its patients. The bankruptcy

---

[10] *Alternate Family Care*, 377 BR at 760.

[11] *Id.* at 760 ("By presumption children are generally unable to protect and preserve their interests.")

[12] *In re Genesis Hospice Care, LLC,* 2009 WL 467265 *2 (Bankr. N.D. Miss. Feb. 24, 2009)(need for ombudsman is lessened where debtor provides only outpatient services); *In re North Shore Hematology-Oncology Assoc.,* 400 B.R. 7, 12 (Bankr. E.D.N.Y. 2008).

5

has not increased the risk to the patients, or otherwise altered whatever ability they had to protect themselves prior to the bankruptcy.[13] While the fourth factor supports the appointment of an ombudsman, the circumstances of this case limit its weight.

Factors five and seven require the court to look at the level of dependency of the patients on DFS and the potential injury to the patients if DFS drastically reduced its level of patient care. These factors will almost always support the appointment of an ombudsman.[14] The court has no doubt that DFS' clients currently depend upon the continuation of its services, and would be harmed if DFS was required to drastically reduce them. Such harm could be mitigated, however, because other options for treatment are available. Mr. Blair testified that two other entities provide similar, albeit less comprehensive, services for troubled children. The fifth and seventh factors support the appointment of an ombudsman under the circumstances of this case.

The remaining factors weigh in favor of DFS' *Motion*. Its bankruptcy was precipitated by the discovery of substantial unpaid federal employment taxes rather than patient care issues.[15] Mr. Blair testified that, unbeknowst to DFS' board of directors, prior management elected to continue lease payments for unused space rather than pay its employment taxes, resulting in a substantial federal tax debt. DFS has filed bankruptcy to reorganize its operations, reject several leases, and establish a payment plan for the past due

---

[13] *Alternate Family Care,* 377 B.R. at 760 ("the children's inability to advocate or protect their own interests is not something that is heightened by virtue of the bankruptcy.")

[14] *In re Flagship Franchises of Minnesota, LLC,* 484 B.R. 759, 764-65 (Bankr. D. Minn. 2013); *In re Valley Health System,* 381 B.R. 756, 763-764 (Bankr. C.D. Cal. 2008); *Alternate Family Care,* 377 B.R. at 760.

[15] The Internal Revenue Service has filed Proof of Claim No. 4 asserting a priority claim in the amount of $1,530,688.06 under 11 U.S.C. § 507(a)(8).

taxes. There is no evidence that the bankruptcy is related to the care of its clients or, more specifically, deficiencies in that care.

Because the bankruptcy is the result of a discrete financial problem, the court is also convinced that there is no tension between the interests of the debtor and its patients. Mr. Blair believes that the rejection or renegotiation of the excess leased space will allow DFS to return to financial health. Such business decisions should not affect patient care. Mr. Blair testified that the chapter 11 filing would not cause DFS to reduce either its patient services or its staffing levels. It is in DFS' best interests to maximize patient care which, in turn, will maximize its revenue.

As with most health care businesses, DFS is subject to governmental supervision of its patient care.[16] The Alaska Division of Behavioral Health closely supervises its patient care and audits its operations. DFS is also accredited by the Council of Accreditation. This is an international, not for profit, child and family service and behavioral health care accrediting organization that Mr. Blair described as the equivalent of the Joint Committee on Accreditation for Hospital Organizations.[17] Because DFS is already subject to governmental oversight, the appointment of an ombudsman would be redundant.

DFS also has a number of internal safeguards in place. Mr. Blair testified that all staff have structured training upon commencement of their employment with DFS and annual training requirements thereafter. New hires are mentored and receive ongoing supervision. All patient notes and encounters are audited and reviewed by a supervisor. All assessments

---

[16] DFS's operation of a preschool is also regulated by the Municipality of Anchorage.

[17] *See In re Barnwell County Hosp.*, 2011 WL 5443025 *2 (Bankr. D. S.C. 2011) (considering debtor's accreditation by the Joint Committee); *Valley Health Systems*, 381 BR at 762 (same).

and treatment plans are audited for review. DFS must make quarterly reports to the State of Alaska which it also uses to track client outcomes. Complaints about patient care may filed formally with DFS or the State of Alaska, as well as online. DFS has designated a "quality assurance person" who is responsible for all complaints, performs periodic audits and aggregates client data for reporting and performance review. This person essentially acts as an internal patient care ombudsmen. Finally, Mr. Blair advised the court that he will be stepping down as interim CEO, but will remain with the debtor on a part-time basis to provide supervision and conduct additional quality assurance review. DFS' existing internal safeguards weigh heavily against appointment of an ombudsman.

Finally, courts have considered the impact the cost of an ombudsmen would have on a successful reorganization. This factor typically weighs against appointment of an ombudsman.[18] DFS has not presented any evidence as to this potential cost, but any additional administrative expense would obviously have a negative impact on the debtor's reorganization. DFS faces substantial priority tax claims that must be paid in full under any plan of reorganization. Any monies used for an ombudsman reduce the amounts available to promptly pay the tax debt and limit any return to the general unsecured creditors. Still, any negative cost impact must always be balanced against the potential risk to the debtor's patients if additional oversight from an ombudsman is not provided. Here, costs militate against a need for appointment of an ombudsman, but only because the other factors discussed above – DFS' assurances that its bankruptcy has not affected its level of patient care, the absence of any objections, including the State of Alaska, and the existing internal

---

[18] *Valley Health System,* 381 B.R. at 764. In an appropriate case, the ombudsman may be able to retain counsel as well, potentially incurring additional administrative expense. *See In re Synergy Hematology-Oncology Medical Assoc.*, 433 B.R. 316, 319 (Bankr. C.D. Cal. 2010).

safeguards and external supervision – demonstrate that patient care is already protected. Under the circumstances of this case, the cost of an ombudsman is accorded little weight.

Having considered the totality of circumstances in this case, the court is persuaded that appointment of an ombudsman is not necessary for the protection of DFS's patients. Patient care issues did not precipitate DFS' bankruptcy, nor is there any indication that patient care will be jeopardized within the chapter 11. DFS filed bankruptcy to shed extraneous expenses and come to terms with its tax debt. It has identified specific steps to get there, and has already rejected two leases. The nature of DFS' outpatient services and the absence of overnight or extended stays minimizes the risk of harm to patients. DFS has further minimized that risk by creating internal procedures to identify and address problems with patient care. It already employs a quality assurance person that acts as an internal ombudsman. Moreover, there is sufficient regulatory oversight to ensure that any deterioration in patient care is promptly brought to the attention of the debtor, the US Trustee, and this court. Appointment of an ombudsman under such circumstances would be redundant.

For these reasons, the court will grant DFS' *Motion.* That being said, § 333(a)(1) is clear that the protection of patients' interests is paramount when a health care business seeks reorganization. Accordingly, if there is a change in circumstances such that the care to DFS' patients is jeopardized, or if new evidence is discovered that would raise concerns about such care, the United States Trustee or any party in interest may move for the appointment of a patient care ombudsman under Fed. R. Bank. P. 2007.2(b).

An order will be entered consistent with this *Memorandum.*

DATED: April 24, 2013.

9

BY THE COURT

 /s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve:  D. Bundy, Esq.
W. Courshon, Esq.
W. Dawson, Esq.
G. Sleeper, Esq.
U. S. Trustee

10